UNITED STATES of America

v.

Alexander SYLVESTER, Appellant.

No. 09–2863.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Jan. 28, 2010.

Filed: Feb. 17, 2010.

William C. Simmers, Esq., Office of United States Attorney, Williamsport, PA, for Appellee.

Stephen F. Becker, Esq., Shapiro & Becker, Lewisburg, PA, for Appellant.

Before: FUENTES and FISHER, Circuit Judges, and DIAMOND,* District

* Honorable Paul S. Diamond, United States   District Judge for the Eastern District of

Judge.

### OPINION OF THE COURT

FISHER, Circuit Judge.

A jury convicted Alexander Sylvester of one count of possession of a prohibited object by a prison inmate in violation of 18 U.S.C. § 1791(a)(2). The District Court sentenced him to sixty months in prison. He appeals both his conviction and his sentence. We will affirm the former, vacate the latter, and remand to the District Court for resentencing.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Sylvester was charged in June 2008 with one count of possession of a prohibited object by a prison inmate in violation of 18 U.S.C. § 1791(a)(2). A two-day trial ensued. At trial, the government presented evidence that Sylvester, while serving a sentence in federal prison for unrelated charges, triggered a metal detector alarm at the entrance to the prison cafeteria. He refused to submit to a pat-down by prison officials and fled from the cafeteria to another area of the prison compound. While fleeing, Sylvester threw an object to the ground. Prison officials later identified that object as a homemade knife, or a "shank." Sylvester did not testify at trial, but the defense called several witnesses. Among those witnesses were two of Sylvester's co-inmates, one of whom testified that it was he, not Sylvester, who had thrown the object, and another of whom testified that the object Sylvester had thrown was a can of chewing tobacco. The jury returned a guilty verdict and the Dis-

trict Court thereafter sentenced Sylvester to sixty months in prison.

Sylvester has timely appealed his conviction and sentence.[1]

### II.

Sylvester attacks his conviction on the grounds that the prosecutor's statements during closing argument violated his Fifth Amendment right against self-incrimination and that the District Court erroneously refused to instruct the jury on his theory of the case. Sylvester also challenges his sentence on the ground that the District Court wrongly classified him as a career offender under the United States Sentencing Guidelines. We address each of these issues in turn.

### A. Statements During Closing Argument

Sylvester argues that the District Court erred in denying his motion for a mistrial based on the prosecutor's statements during closing argument. "We review a district court's decision to deny a motion for mistrial predicated on the grounds that the prosecutor made improper remarks in a closing argument for abuse of discretion." *United States v. Wood,* 486 F.3d 781, 786 (3d Cir.2007) (citation omitted).

In *Griffin v. California,* the Supreme Court held that the Fifth Amendment bars the prosecution from commenting, directly or indirectly, on a defendant's silence. 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). "Otherwise, the defendant is penalized by the court for exercising his constitutional right not to incriminate himself." *United States v. Isaac,* 134 F.3d 199, 206 (3d Cir.1998) (citing *Griffin,* 380 U.S. at 614, 85 S.Ct. 1229). A comment

Pennsylvania, sitting by designation.

1. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

"is directed to a defendant's silence when the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Brennan,* 326 F.3d 176, 187 (3d Cir.2003) (internal quotation marks and citation omitted). "Statements regarding the absence of facts in the record, however, need not be taken as comment on a defendant's failure to testify." *Id.* (internal quotation marks, alterations and citations omitted). Furthermore, "when the defendant uses his *Griffin* protection as a sword, rather than a shield, the prosecution may respond appropriately." *Isaac,* 134 F.3d at 206 (citing *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)). In determining whether a prosecutor has impermissibly commented on a defendant's right against self-incrimination, "we must examine the challenged prosecutorial remark in its trial context." *Lesko v. Lehman,* 925 F.2d 1527, 1544 (3d Cir.1991) (citations omitted).

During closing argument, the prosecutor stated in relevant part as follows:

> So what [Sylvester] does, if his claim is being it is this, what he does, he runs. He is told to stop. Rules violation. He flees. Told to stop. Rules violation. He's told to get on the ground. Told to stop. Rules violation. He breaks all of these rules for a can of chewing tobacco. Do you really think, using your common sense, that he goes through all that bother, all that trouble of fleeing those officers, of refusing to obey their commands because of a can of chewing tobacco, Copenhagen?
>
> Or do you really think, using your common sense, he is fleeing because he knows this is a serious violation. He knows he is going to get jammed up if this is found on him. That is why he ran out and gave it a toss and off it went.

> Judge Jones told you at the start of this trial that anything that I would say or defense says in the opening statement or closing arguments is not evidence. *The only person that you've heard say that Mr. Sylvester panicked with the can of chewing tobacco was Mr. Becker* [Sylvester's counsel]. *That was Mr. Becker's theory. No witness took the stand and said he panicked.*
>
> It's a credibility issue. Five prison guards, they all testified consistent. We have inmates who go out there as far as 2045, 2050, and their stories are just entirely inconsistent with each other as far as where the object was thrown and where it was dropped.

(App. 263 (emphasis added).)

▮ After the prosecution finished its closing argument, Sylvester's counsel moved the District Court at sidebar for a mistrial, arguing that the prosecutor had implicitly, and impermissibly, commented on Sylvester's election not to testify because, in his view, no one but Sylvester could have testified about whether Sylvester had in fact panicked. The District Court denied the motion, concluding that the prosecutor's statement, taken in context, plainly referred only to the witnesses who had actually testified at trial and could not be interpreted as an allusion to Sylvester's silence.

Sylvester paints only the italicized portion of the above excerpt of the prosecutor's closing argument as an infringement of his Fifth Amendment right against self-incrimination. Taking that remark in context, however, we are far from persuaded that it could be reasonably construed as a reference to Sylvester's silence at trial. *Cf. United States v. Price,* 13 F.3d 711, 721 (3d Cir.1994). Rather, we agree with the District Court that the remark was most reasonably understood as a reference to the absence of testimony that Sylvester

panicked by those witnesses who actually took the stand.

Even assuming that Sylvester's characterization of the prosecutor's statement is correct, we still see no evidence of misconduct. Sylvester's counsel told the jury during his opening statement that when prison officials ordered Sylvester "to go through [the metal detector] again[,] . . . it went off again and he panicked." (App.79.) Importantly, that statement invited the prosecutor's statement about the lack of testimony regarding Sylvester's purportedly panicked state, as there was no testimony presented by either side suggesting that Sylvester had panicked when ordered to submit to a pat-down. In other words, the context of the remark shows that it was directed toward rebutting Sylvester's theory of the case. Under these circumstances, the prosecutor's statement did not constitute misconduct. *Cf. Brennan*, 326 F.3d at 188 (prosecutor's statement "was permissible argument regarding what evidence was, and was not, in the record"); *Isaac*, 134 F.3d at 206–07 (no Fifth Amendment violation where the prosecutor stated in closing argument that "[the defendant] captained that boat from Jamaica, and the only people who would know that [the defendant] captained that boat from Jamaica are [the defendant], Conrad Brown, Irvin Reid, and that fourth individual in Jamaica. Those are the only people"); *United States v. Balter*, 91 F.3d 427, 441 (3d Cir.1996) (prosecutor's statement exposing weaknesses in the defense's theory was not impermissible).

Because the prosecutor committed no misconduct, we perceive no abuse of discretion in the District Court's denial of Sylvester's motion for a mistrial. *See Wood*, 486 F.3d at 786 ("To find that the court abused its discretion in failing to order a mistrial for prosecutorial misconduct, we must first be convinced that the prosecution did in fact misconduct itself." (quotation omitted)).

## B. Jury Instructions

Sylvester argues that he is entitled to a new trial because of the District Court's refusal to read his proposed jury instruction.

"We review a district court's decisions regarding jury instructions for abuse of discretion." *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir.2008) (citation omitted). "We reverse 'a district court's denial to charge a specific jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant.'" *United States v. Leahy*, 445 F.3d 634, 651 (3d Cir.2006) (quoting *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir.1992)). In determining whether reversal is warranted, we read the jury instructions as a whole, *United States v. Flores*, 454 F.3d 149, 157 (3d Cir.2006), bearing in mind that "the trial judge retains discretion to determine the language of the jury charge. . . . So long as the court conveys the required meaning, the particular words used are irrelevant." *Id.* at 161 (citation omitted). Moreover, while "a defendant is entitled to a jury instruction on a theory of defense whenever some evidence supports that theory, . . . [t]he district court is not obligated to use the language the defendant proffers." *United States v. Kapp*, 781 F.2d 1008, 1013 (3d Cir.1986) (citation omitted).

■ Here, Sylvester asked the District Court to read a proposed jury instruction stating his theory of the case. According to that theory, the object that triggered the metal detector alarm was a can of chewing tobacco rather than a knife, and the knife that prison officials found on the

ground had in fact been discarded by another inmate. Specifically, Sylvester wanted the Court to tell the jury that "because the prosecutor chose not to charge the defendant with possession of a prohibited object, tobacco, you will not have the option of convicting Alexander Sylvester of that crime." (App.309–10.) The District Court agreed that Sylvester could argue his theory of the case to the jury but declined to read his proposed instruction. The Court reasoned that its other instructions made sufficiently clear that Sylvester's guilt *vel non* hinged on the jury's finding beyond a reasonable doubt that Sylvester possessed a weapon, not some other object. We agree with the District Court's conclusion.

The District Court told the jurors that they could find Sylvester guilty only if they found that he had possessed a weapon, and provided a definition of "weapon." The negative inference clearly flowing from that instruction was that the jury could not convict Sylvester if it determined that the object Sylvester possessed was a can of chewing tobacco, as he argued, or any other object that did not come within the definition of a weapon as read by the District Court. By finding Sylvester guilty of violating § 1791(a)(2), the jurors necessarily found beyond a reasonable doubt that Sylvester possessed a weapon, and that was all they needed to do under the circumstances. Put another way, even assuming that Sylvester's proposed instruction was correct, it was substantially covered by the District Court's other instructions. *Cf. Hoffecker,* 530 F.3d at 167; *United States v. Weatherly,* 525 F.3d 265, 270 (3d Cir.2008); *United States v. Leahy,* 445 F.3d 634, 651–52 (3d Cir.2006). Ac-

cordingly, viewing the jury instructions in their entirety and in context, we conclude that the District Court did not abuse its discretion in rejecting Sylvester's proposed jury instruction.

## C. Career Offender Classification at Sentencing

Sylvester claims that the District Court erred in classifying him as a career offender under § 4B1.1 of the United States Sentencing Guidelines. We exercise plenary review over a district court's determination that an offense constitutes a crime of violence for purposes of determining career offender status under U.S.S.G. § 4B1.1. *See United States v. Shabazz,* 233 F.3d 730, 731 (3d Cir.2000); *United States v. Williams,* 176 F.3d 714, 715 (3d Cir. 1999).

Before sentencing, the United States Probation Office prepared a Presentence Investigation Report, which assigned Sylvester a base offense level of 13 and classified him as a career offender under U.S.S.G. § 4B1.1 based on both the conclusion that Sylvester's § 1791(a)(2) conviction was a crime of violence and his two prior felony convictions for crimes of violence, thus resulting in a total offense level of 17 and a criminal history category of VI.[2] Based on these calculations, Sylvester's advisory Guidelines range was fifty-one to sixty months in prison.[3] Sylvester objected to his classification as a career offender on the ground that his conviction for possession of a prohibited object did not qualify as a crime of violence. The District Court overruled that objection and concluded that a § 1791(a)(2) conviction is

---

2. The two prior felony convictions were, respectively, for first-degree robbery and manslaughter.

3. Sylvester's Guidelines range was initially fifty-one to sixty-three months in prison, but

because a § 1791(a)(2) conviction imposes a five-year maximum prison sentence, the upper end of his Guidelines range was reduced to sixty months pursuant to U.S.S.G. § 5G1.1(a).

a crime of violence. The Court sentenced Sylvester to sixty months in prison.

 On appeal, Sylvester renews his argument that a § 1791(a)(2) conviction does not qualify as a crime of violence. As both parties recognize, in *United States v. Polk*, 577 F.3d 515 (3d Cir.2009)—issued less than two months after the District Court sentenced Sylvester—we held that "a § 1791(a)(2) conviction for possession of a prohibited object designed to be used as a weapon in prison is not a 'crime of violence' for purposes of the [c]areer [o]ffender Guidelines." *Id.* at 520. In light of *Polk*, the government "concedes this issue" and asks us to remand for resentencing. (Appellee's Br. 26.)

Sylvester also argues that he cannot be classified as a career offender based on his two prior felony convictions because those convictions, he asserts, occurred more than fifteen years before his § 1791(a)(2) conviction. He acknowledges, however, that he did not raise this issue before the District Court. Ordinarily, that omission would limit our review to the plain error standard. *See Polk*, 577 F.3d at 517 ("Because Polk did not object to his designation as a career offender for sentencing purposes in the District Court, we review for plain error." (citing Fed.R.Crim.P. 52(b))). "To grant the relief requested under this standard, we would need to conclude not only that the District Court erred in classifying [Sylvester] as a career offender, but that the error was plain, and it affected adversely 'substantial rights' of [Sylvester] as well as the 'fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quotation omitted). Because we will remand to the District Court for resentencing in light of *Polk*, we need not address Sylvester's other challenge to his career offender status, as he will be able to raise it in the District Court on remand.

## III.

For the foregoing reasons, we will affirm Sylvester's conviction but vacate his sentence and remand to the District Court for resentencing.